IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

SARA W.,[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Civil No. 23-869 (RMB)

**OPINION**

**APPEARANCES**

Jennifer L. Stonage
Bross & Frankel, P.A.
725 Kenilworth Ave., Suite 2
Cherry Hill, NJ 08002

    *On behalf of Plaintiff*

Evelyn Rose Marie Protano
Special Assistant U.S. Attorney
c/o Social Security Administration
Office of Program Litigation, Office 3
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant*

---

[1] Due to the significant privacy concerns in Social Security cases, any non-governmental party will be identified and referenced solely by first name and last initial in opinions issued in Social Security cases in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021-10.

1

**RENÉE MARIE BUMB, Chief United States District Judge**

This matter comes before the Court upon an appeal filed by Plaintiff seeking judicial review of the final determination of the Commissioner of the Social Security Administration (the "Commissioner" and the "SSA," respectively), which denied her application for Social Security Disability benefits. For the reasons set forth herein, the Court **AFFIRMS** the decision of the Administrative Law Judge ("ALJ").

**I.     PROCEDURAL HISTORY**

On October 17, 2018, Plaintiff filed an application for Social Security Disability benefits under Title II of the Social Security Act (the "Act"), alleging an onset date of disability beginning June 20, 2016. [R. at 15.] The claims were first denied on December 28, 2018, and again denied upon reconsideration on March 1, 2019. [*Id.*]

Plaintiff filed a timely written request for a hearing before an ALJ. [*Id.*] That hearing took place on November 12, 2021. [*Id.*] Plaintiff was represented by an attorney at the hearing at which the ALJ heard testimony from Plaintiff. [R. at 37–67.] The ALJ also heard testimony from a vocational expert, Glee Ann L. Kehr. [R. at 60–65.] The ALJ issued her decision on December 10, 2021, finding that Plaintiff was not disabled under the Act. [*See infa* at III.C.] On December 15, 2022, the Appeals Council denied Plaintiff's renewed request for review, rendering the ALJ's decision final. [R. at 1.] Plaintiff now seeks this Court's review pursuant to 42 U.S.C. § 405(g).

## II.     STANDARD OF REVIEW

When reviewing a final decision of an ALJ with regard to disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i–v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is, he is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, he is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Smith*, 631 F.3d at 634. If the claimant's impairments do, he is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [he] can still do despite [his] limitations." *Id.* §§ 404.1545(a)(1), 416.945(a)(1). If the claimant can perform his past relevant work despite his limitations, he is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] ... age, education,

and work experience[.]" *Id*. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If he cannot, he is disabled.

*Hess*, 931 F.3d at 201–02 (some alterations omitted).

### III. FACTUAL BACKGROUND

The Court recites only the facts that are necessary to its determination on appeal, which is narrow. Plaintiff was 24 years old on the alleged onset date and 32 years old at the time of the ALJ's decision. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2017, meaning that she had to establish disability on or before that date to be entitled to benefits. [*See* R. at 15.]

#### A. Plaintiff's Educational Work, and Medical History

Plaintiff has a high school education and previously worked as a teacher's assistant. [R. at 25.] The ALJ determined that Plaintiff had not engaged in substantial gainful activity between the alleged onset date and the date Plaintiff was last insured. [R. at 17.] Plaintiff suffers from the following physical impairments: degenerative disc disease of the lumbar spine; fibromyalgia; chronic sinusitis; a right post-surgery shoulder disorder; mild obesity; migraines/a pseudo-seizure disorder; Elhers-Danlos syndrome; complex regional pain syndrome ("CRPS") of the arms and feet; hypoglycemia and low blood pressure; asthma; and anxiety/panic attacks/post-traumatic stress disorder ("PTSD"). [R. at 17–18.]

### B.      The ALJ's Decision

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability, June 20, 2016. [R. at 17.]

At Step Two, the ALJ found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine; fibromyalgia; chronic sinusitis; a post-surgery shoulder disorder; mild obesity; and migraines/a pseudo-seizure disorder. [*Id*.] But the ALJ found Plaintiff's Elhers-Danlos syndrome non-medically determinable and her CRPS of the arms and feet, hypoglycemia and low blood pressure, asthma, anxiety/panic attacks/PTSD not severe. [R. at 18–19.]

At Step Three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. [R. at 19–20.]

At Step Four, the ALJ found that, during the relevant period, Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she would require a cane for distance ambulation. She can sit for up to six hours. She can occasionally climb ramps and stairs but cannot climb ladders/ropes/scaffolds. She can also only occasionally stoop, kneel, crouch, and crawl but cannot balance on slippery, uneven, or narrow terrain. The claimant can frequently reach in all directions bilaterally. She cannot work in environments with concentrated exposure to extreme heat, cold, wetness, and humidity; she cannot work in environments with concentrated exposure to fumes, odors, dusts, gases, and other respiratory irritants; and she cannot work around heavy machinery with fast moving parts or at unprotected heights.

[R. at 20–25.] The ALJ further found that Plaintiff could not perform any past relevant work experience. [R. at 25.]

At Step Five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, considering her age, education, work experience, and residual functional capacity. [R. at 26.] Crediting testimony of the vocational expert, the ALJ found that Plaintiff would be able to perform the requirements of representative occupations such as a merchandise marker, office helper, or mail room clerk. [*Id*.] Accordingly, the ALJ concluded that Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff raises two arguments in support of remand. First, she argues that the ALJ erred at Step Two in failing to consider Plaintiff's degenerative disc disease of the cervical spine and sleep apnea diagnoses, finding her Ehlers-Danlos Syndrome and CRPS non-medically determinable, and finding her mental health conditions non-severe. Second, she argues that the ALJ failed to properly consider medical opinion evidence from Dr. Ronald Karpf, the state consultive examiner, as well as from Dr. Pamela Traisak, Plaintiff's treating rheumatologist and Dr. Christopher Vare, Plaintiff's primary care physician.

### A. The ALJ's Failure to Consider Plaintiff's Cervical Spine and Sleep Apnea Impairments

#### 1. *Failure to Consider Cervical Spine Impairment at Step Two*

Plaintiff argues that the ALJ's decision is silent on her cervical spine impairment despite its documentation in the medical record. [Pl.'s Br. at 16.] Defendant argues that the ALJ's silence with respect to Plaintiff's cervical spine impairment at Step Two

7

was harmless because the ALJ considered Plaintiff's cervical spine impairment in determining Plaintiff's RFC. [Def.'s Br. at 17.]

"[W]hen an ALJ finds that the claimant has at least one severe impairment at step two and continues onto the subsequent steps, omission of another impairment at step two is harmless error." *Friday v. Comm'r of Soc. Sec.*, 2021 WL 3879081, at *4 (D.N.J. Aug. 31, 2021) (citing *Torres v. Commissioner of Social Security*, 2018 WL 1251630, at *5 (D.N.J. 2018)). "The error at step two is only harmless, however, where the ALJ has considered the missing medically determinable impairment in the RFC determination and it would not otherwise affect the outcome of the case." *Friday*, 2021 WL 3879081, at *4 (citation omitted); *see also* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

The Court finds that the ALJ's failure to consider Plaintiff's cervical spine impairment at Step Two was harmless error. The ALJ adequately considered Plaintiff's cervical spine impairment in determining her RFC. Plaintiff cites two MRI scans of Plaintiff's cervical spine from 2018 and 2020 that the ALJ failed to consider. [Pl.'s Reply at 3–4 (citing R. at 512, 560, 562–63).] But the ALJ's decision clearly cites to and discusses both scans in determining Plaintiff's RFC, noting that the 2018 scan "showed mild degenerative changes at several levels, most significant at C4-5 where mild spinal canal stenosis was present" and the 2020 scan "showed only mild

multilevel degenerative disc disease without nerve root involvement." [R. at 22–23 (citing R. at 508, 512–13 563, 1738–40).] Thus, the ALJ's failure to consider Plaintiff's cervical spine impairments at Step Two was harmless.

### 2.  *Failure to Consider Sleep Apnea Impairment at Step Two*

Plaintiff also argues that the ALJ failed to consider her sleep apnea impairment at Step Two. [Pl.'s Br. at 16.] Indeed, the ALJ did not list Plaintiff's sleep apnea diagnosis as an impairment, either severe or non-severe. Defendant does not dispute this, but argues that mere diagnosis of sleep apnea in the medical record is insufficient to establish that it was a medically determinable condition, and that Plaintiff cannot point to any limitations stemming from her sleep apnea impairment. [Def.'s Br. 17–18.] Defendant is correct that a mere diagnosis is insufficient to establish a medically determinable condition, let alone a severe one. *See Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 (3d Cir. 2007). But if an impairment is properly documented in the record, it must be analyzed in terms of its impact on a claimant's functional abilities whether it is severe or non-severe. *Jankowski v. Comm'r of Soc. Sec.*, 2020 WL 5810568, at *5 (D.N.J. Sept. 30, 2020) (citing SSR 02–01p, SSR 00–3p).

The Court agrees that the ALJ erred at Step Two in failing to consider Plaintiff's sleep apnea diagnosis but finds the error harmless and remand unnecessary. Plaintiff has not pointed to evidence in the medical record supporting a conclusion that her sleep apnea—"individually or in combination with her other impairments—rendered her unable to work." *Suarez v. Astrue*, 996 F. Supp. 2d 327, 332 (E.D. Pa. 2013). She points only to her sleep apnea diagnosis being "well documented" and her general

9

"sleeping issues," including her testimony that she slept only for 3-4 hours a night and struggled with fatigue. [Pl.'s Reply at 6.] But Plaintiff fails to connect the dots between her sleep issues and her sleep apnea diagnosis. Her sleep issues could be the result of her sleep apnea, or they could be the result of any number of her other conditions alone or in combination. Absent more evidence from the medical record, the Court cannot conclude that the ALJ's failure to consider Plaintiff's sleep apnea was anything other than harmless error. 20 C.F.R. § 404.1512 ("[Claimants] have to prove to [the Social Security Administration] that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled .... [The SSA] will consider only impairment(s) you say you have or about which we receive evidence.").

> B. **Plaintiff's CRPS of the Arms and Feet, Ehlers-Danlos Syndrome and Mental Health Impairments**
>
>> 1. *Plaintiff Has Waived Her Challenge to the ALJ's Determination that her CRPS of the Arms and Feet was Non-medically Determinable*

Plaintiff appears to challenge the ALJ's finding of her CRPS of the arms and feet as non-medically determinable but argues only in a passing reference that the ALJ's reasoning with respect to Plaintiff's CRPS was "lackluster." [Pl.'s Br. at 16.] The Court deems this to be an underdeveloped argument and thus, waived. *See Conroy v. Leone*, 316 F. App'x 140, 144 n.5 (3d Cir. 2009) (the inclusion of only "one conclusory sentence" in an argument constitutes an "undeveloped argument [that] has been waived"); *Laborers Int'l Union of N. America, AFL-CIO v. Foster Wheeler Corp.*, 26

10

F.3d 375, 398 (3d Cir. 1994) (explaining that "a passing reference to an issue … will not suffice to bring that issue before [the] court."). In any case, the ALJ adequately explained why Plaintiff's CRPS of the arms and feet was non-medically determinable noting that there was no medical evidence making any such formal diagnosis. [R. at 18.]

### 2. *Ehlers-Danlos Syndrome*

The ALJ found that Plaintiff's Ehlers-Danlos Syndrome—a connective-tissue disorder—was non-medically determinable because she never received a definitive diagnosis of that condition from a physician, only a speculation by her treating orthopedist that Ehlers-Danlos Syndrome might be an underlying cause for her hypermobile joints, especially her right shoulder. [R. at 18.] Plaintiff argues that the ALJ's reasoning, and Defendant's arguments, mischaracterizes the record because Plaintiff's treating orthopedist concluded that she "*most likely* has Ehlers-Danlos [S]yndrome." [Pl.'s Br. at 17 (emphasis added).]

True, no doctor definitively diagnosed Plaintiff with Ehlers-Danlos Syndrome. But a lack of a definitive diagnosis is not necessarily grounds to find that a condition is not medically determinable. The regulations only state that a medically determinable impairment is any "anatomical, physiological, or psychological abnormalit[y] that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. Nothing about a more-likely-than not diagnosis appears to be inconsistent with the regulatory definition of a medically determinable impairment.

11

The Court, however, concludes that any error in failing to consider Plaintiff's more-likely-than-not Ehlers-Danlos Syndrome was harmless because the ALJ considered all the claimant's complaints of chronic joint pain and dislocation in the RFC assessment. [*See* R. at 18, 23; *see also Friday*, 2021 WL 3879081, at *4.] Indeed, the same medical evidence Plaintiff cites in support of her argument that the ALJ incorrectly found her Ehlers-Danlos Syndrome to be non-medically determinable was expressly considered by the ALJ in determining Plaintiff's RFC with respect to her chronic joint pain and dislocation. [*Compare* Pl.'s Br. at 7 (citing R. at 1400), *with* R. at 23.] The Court will not remand on this basis.

### 3. *Mental Health Impairments*

When assessing the severity of a claimant's mental health impairments, the regulations require an ALJ to rate the claimant's degree of limitation in four functional areas: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). An ALJ will generally find a claimant's mental impairment non-severe if the limitations are rated as "none" or "mild." 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).

Here, the ALJ properly engaged with the applicable standard and cited substantial evidence supporting the conclusion that Plaintiff's mental impairments resulted in only mild or no limitations. With respect to understanding, remembering, or applying information, the ALJ found mild limitation, crediting the opinion of Dr. Karpf who concluded that Plaintiff's memory was "mildly impaired due to [the]

12

patient's anxiety and depression." [R. at 19 (citing R. at 1379–84).] With respect to interacting with others, the ALJ found mild limitation, citing evidence that although Plaintiff's mood and affect was irritable, she was generally "cooperative" and her social skills were adequate with neighbors, people in the community, and sometimes, her family. [R. at 19 (citing R. at 1381–82).] With respect to concentrating, persisting, or maintaining pace, the ALJ found mild limitation, citing evidence that Plaintiff's attention and concentration were impaired to her anxiety and depression but that she could concentrate well enough to count serial 2s from 10, although not serial 3s from 20 or serial 7s from 100. [R. at 19 (citing R. at 80, 1382).] Finally, with respect to adapting or managing oneself, the ALJ found no limitations noting that Plaintiff was able to perform most activities of daily living independently as well as helping care for her mother and grandmother. [R. at 18–19 (citing R. at 456, 469, 571, 1448).] Accordingly, there was substantial evidence to support a conclusion that Plaintiff's mental impairments were non-severe. 20 C.F.R. § 404.1520a(d)(1) (explaining that mild mental impairments generally support the conclusion that impairments are not severe); *D.C. v. Comm'r of Soc. Sec.*, 2021 WL 1851830, at *5 (D.N.J. May 10, 2021) (ALJ's decision that a claimant's depressive disorder was non-severe was supported by substantial evidence where the ALJ adequately considered the four functional areas).[2]

---

[2] The Court considers whether the ALJ adequately addressed the impact of Plaintiff's mental impairments on her ability to work *infra* at Section IV.C.1.

### C.     Medical Opinion Evidence and RFC Determinations

#### 1.     *Opinion of Dr. Ronald Karpf and Plaintiff's RFC*

Plaintiff argues that the ALJ erred in failing to incorporate Plaintiff's mental health impairments into the RFC as identified by Dr. Karpf's opinion. These include Dr. Karpf's diagnosis of Plaintiff's PTSD and his observations of Plaintiff's lethargic motor behavior, memory impairments, inability to do simple calculations, poor immediate retention and recall, poor insight and judgment, and below average cognitive functioning. [Pl.'s Br. at 22 (citing R. at 1380–82).]

Indeed, at Step Four, the ALJ did not incorporate any functional limitations with respect to Plaintiff's mental health impairments, finding persuasive at Step Two Dr. Karpf's overall conclusion that "[a]ny social and occupational limitations [in this case] are due more to physical status than mental status." [R. at 19 (citing R. at 1380).][3] Plaintiff argues that the ALJ finding Dr. Karpf's overall conclusion persuasive at Step Two does not relieve her of the obligation at Step Four to "review all symptomology associated with [Plaintiff's mental health] impairments" and include limitations

---

[3] When considering medical opinion evidence to determine an individual's RFC, the regulations require an ALJ to consider the opinion's persuasiveness. 20 C.F.R. § 404.1520c(a). An ALJ's consideration of the persuasiveness of opinion evidence is guided by two primary factors: supportability and consistency.[3] Supportability is "the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source," and consistency is "the extent to which the medical source's opinion is consistent with the record as a whole." *Nicholas R. v. Kijakazi*, 2023 WL 3580837, at *5 (D.N.J. May 19, 2023). "Although the ALJ may weigh the credibility of the evidence, [she] must give some indication of the evidence which [she] rejects and [the] reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

14

consistent with those symptoms (or explain why limitations consistent with those symptoms were not included). [Pl.'s Br. at 22.] Defendant responds that the ALJ did not have to incorporate limitations based on Dr. Karpf's examination findings because opinion evidence under the regulations is a "'statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions' in abilities to perform physical, mental, environmental, or other demands of work." [Def.'s Br. at 27 (quoting 20 C.F.R. §§ 404.1513(a)(2)).] In other words, Defendant argues, the ALJ appropriately considered and accepted the only part of Dr. Karpf's evaluation that constituted an opinion—that any social or occupational limitations suffered by Plaintiff were due to physical, rather than mental, impairments. [Def.'s Br. at 27 (citing R. at 1380).]

It appears to the Court that the ALJ did not address any mental health limitations at Step Four because it would have been redundant to do so after having credited Dr. Karpf's opinion that "[a]ny social and occupational limitations [in this case] are due more to physical status than mental status" and noting that there was a "lack of significant clinical findings on Plaintiff's mental status exams" as found by the State Agency psychological consultants. [R. at 19 (citing R. at 80, 113).] Added to that was the ALJ's finding of the Plaintiff's "minimal mental health treatment" and that Plaintiff testified that her mental health medications worked. [R. at 19 (citing R. at 59).] The Court finds the ALJ's consideration of the persuasiveness of Dr. Karpf's opinion at Step Two rather than at Step Four harmless error. Although the ALJ's opinion could have benefitted from some repetition at Step Four describing why the

15

ALJ found Dr. Karpf's opinion persuasive, the Court will not remand to make the ALJ restate that analysis. Doing so would "amount to the kind of pointless ping-pong game that judicial review of agency action should avoid." *Packard v. Astrue*, 2012 WL 4717890, at *3 (E.D. Pa. Oct. 4, 2012) (citations omitted).

### 2. *Opinion of Dr. Pamela Traisak*

Plaintiff argues that the ALJ improperly rejected functional limitations in an opinion submitted by Plaintiff's treating rheumatologist, Dr. Traisak. [Pl.'s Br. at 23.] Those functional limitations included that Plaintiff could expect "significant" side effects from her medication, that she would need to be off-task for at least 25% of a typical workday, and that she would need to lie down daily on an unpredictable basis for around 1.5-2 hours per day. [R. at 1387.]

The Court finds no error in the ALJ's treatment of Dr. Traisak's opinion. There was substantial evidence for the ALJ to conclude that the opinion was unpersuasive, properly applying both the supportability and consistency factors. [*See* R. at 24.] With respect to supportability, the ALJ found the functional limitations unsupported by Dr. Traisak's findings of multiple tender points/lumbar spine tenderness, especially given that Dr. Traisak apparently made those findings based only on Plaintiff's descriptions. [R. at 24 (citing R. at 1960).] And with respect to consistency, the ALJ recognized that the recommended functional recommendations proposed by Dr. Traisak were contradicted by Dr. Traisak's prior findings which were mild. [R. at 24 (citing R. at 1433–66 1826–52).] Plaintiff offers no real argument explaining why the ALJ erred in

applying the persuasiveness factors. The Court will not remand for further consideration of Dr. Traisak's opinion.

### 3. *Opinion of Dr. Christopher Vare*

Finally, Plaintiff argues that the ALJ improperly rejected functional limitations in an opinion submitted by Plaintiff's primary care physician, Dr. Vare. Plaintiff primarily challenges the ALJ's finding that Dr. Vare's opinion was not supported by the medical record because he only cited Plaintiff's "diagnoses and not specific clinical findings of impaired strength, mobility, balance, or other abnormalities," in forming his opinion that Plaintiff would need to be off-task more than 20% of the workday and would be absent from work more than four days per month. [R. at 24 (citing R. at 1994–98).] Plaintiff cites imaging studies and reports referenced in Dr. Vare's opinion that apparently contradict the ALJ's reasoning. [R. at 1994.]

The Court finds no error in the ALJ's treatment of Dr. Vare's opinion. The Medical Source Statement completed by Dr. Vare is precisely the kind of weak opinion evidence that the Third Circuit has cautioned against, requiring the physician to fill out boxes and brief blanks about Plaintiff's symptoms and diagnoses. *See Comm'r Soc. Sec.*, 708 F. App'x 88, 91 (3d Cir. 2017) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (cautioning that opinion evidence that "requires the physician only to check boxes and briefly to fill in blanks … [is] weak evidence at best."); *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) ("[A] medical source does not transform [a] claimant's subjective complaints into objective findings simply by recording them…."). Recognizing as much, the ALJ did not err in finding Dr.

17

Vare's opinion unsupported. The "imaging studies and reports" cursorily referenced in Dr. Vare's report do not alter this conclusion. Without some explanation of what these studies and reports are and what objective clinical findings they support, the Court cannot conclude that they have any bearing on Plaintiff's functional capacity. *Peek v. Kijakazi*, 2023 WL 3062107, at *5 (E.D. Cal. Apr. 24, 2023) (finding no error as to supportability where medical opinion was a list of diagnoses without any accompanying objective medical findings).

## V. CONCLUSION

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**. An accompanying Order shall issue.

**February 16, 2024**                                                **s/Renée Marie Bumb**
Date                                                                   RENÉE MARIE BUMB
                                                                              Chief United States District Judge